UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ESSIE BYRD O/B/O J.E.B. | CIVIL ACTION: 09-11873 |
| Plaintiff | |
| v. | HON. JOHN FEIKENS |
| | UNITED STATES DISTRICT JUDGE |
| COMMISSIONER OF SOCIAL SECURITY | HON. VIRGINIA M. MORGAN |
| Defendant | UNITED STATES MAGISTRATE JUDGE |

## REPORT & RECOMMENDATION

This is an action for judicial review of the defendant's decision to deny plaintiff's 2004 application for Supplemental Security Income on behalf of her minor child. Plaintiff alleges that the child, JEB, is disabled due to asthma and hearing loss in his left ear. (Tr. 49, 78, 83) Plaintiff had a hearing before an ALJ at which she and JEB were represented by an attorney. The ALJ found the child not entitled to benefits because his impairments did not meet, medically equal, or functionally equal a Listed Impairment. The ALJ's decision became the final decision of the agency and plaintiff now appeals *pro se*. The government filed a motion for summary judgment. Plaintiff submitted a handwritten letter as her Motion for Summary Judgment. These have been read and are considered in this determination. An examination of the record and law shows that the Commissioner's decision to deny the application for benefits in question is supported by substantial evidence. Thus, it is recommended that the defendant's motion for summary judgment be granted and the decision denying benefits be affirmed.

1

JEB was born in October, 2002 and was an "older infant" at the time the application was filed and a preschooler at the time of the ALJ's decision in 2008. (Tr. 18, 214) 20 CFR 416.926a(g)(2)

**Standard of Review**

A court applies the same standard of review to the Commissioner's decision denying benefits to a child as to an adult, as both are governed by 42 U.S.C. §405(g). Under that statute, the Commissioner's decision must be affirmed if it is supported by substantial evidence, even if this court might have decided the case differently. *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir.1999), *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir.1990). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994) (per curiam). A court cannot reverse the agency's decision if substantial evidence also supports an opposite conclusion, but only if substantial evidence does not support the ALJ's conclusion. *Crum,* 921 F.2d at 644. It is the plaintiff's burden to establish disability.

Although the standard of review of the Commissioner's decision is the same as for adults, children's disability claims are reviewed under criteria different from adults. There is no five step evaluation as for adults, but pursuant the 1996 enactment of the Personal Responsibility and Work Opportunity Reconciliation Act, which changed the definition of disability for children seeking Social Security benefits, see 42 U.S.C. § 1382c(a)(3)(C), there is a three step sequential process in determining whether a child is "disabled" under the new definition set forth in the Act. First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or

2

functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924. In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. *See* 20 C.F.R. § 416.924(a); *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir.1987). It is insufficient that a claimant comes close to meeting the requirements of a listed impairment. *See Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir.1986).

Under section 416.926(a), if a child's impairment or combination of impairments does not meet or is not medically equivalent in severity to a listed impairment, then the Commissioner will assess all functional limitations caused by the impairment to determine if the child's impairments are functionally equivalent in severity to any of the listed impairments of Appendix 1. (20 C.F.R. § 404, subpt. P, app. 1) The following areas of development (referred to as "domains") are considered in determining whether a child's impairments are functionally equivalent to a listed impairment: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with others; 4) Moving About and Manipulating Objects; 5) Caring for Yourself; and 6) Health and Physical Well Being. *See 20 C.F.R. § 416.926a*. A finding of functional equivalence to a listed impairment is warranted when the child has an extreme limitation in one domain of functioning or marked limitations in two domains of functioning. *See 20 CFR 416.926a(d).*

As summarized in *L.B.M. ex rel. Motley v. Astrue* 2010 WL 1190326, 1(S.D.Ind.,2010):

> By regulation, the Social Security Administration ("SSA") has determined that satisfaction of one of the Listings of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, fulfills the statutory requirement that a child's impairment or combination of impairments "results in marked and severe functional limitations.". The Listing of Impairments, Part B, is a compilation of medical conditions, divided into fourteen major body systems, that the SSA has pre-determined are disabling in children.

20 C.F.R. § 416.925. In general, each listed condition is defined by two sets of criteria: diagnostic findings that substantiate the *existence* of a listed condition and sets of related functional limitations that substantiate the condition's disabling *severity. Id.* A child's impairment or group of impairments can satisfy a listed condition in any of three ways: by meeting all the listed criteria for the condition, 20 C.F.R. § 416.925(c)(3); by medically equaling the criteria, *id.* § 416.925(c)(5); or by functionally equaling the criteria, *id.* § 416.926a(a).

**The ALJ's Opinion**

In this case, the agency conducted a hearing in December, 2007. The ALJ found that the child met the first and second steps, and established the severe impairments of asthma, attention deficit disorder, hearing loss, and speech and language delays. (20 CFR 416.924(c)). The ALJ then determined that these impairments did not alone or in combination meet or medically equal a listed impairment. (Tr. 18) The ALJ then considered whether there was any functional equivalence and after reviewing the evidence, found that there was not. While the child had marked limitation in the domain of Interacting and Relating with others, it was not extreme and there were no "marked" limitations in the other domains. Thus, child was not disabled. The ALJ expressly considered each domain in his review and explained the relevant evidence in support of his conclusion. (Tr. 19-27)

**Analysis**

The ALJ considered plaintiff's testimony that the child had behavioral problems and also her testimony that the side effects of the asthma medication causes him to shake. (Tr. 19) Plaintiff stated that JEB has temper tantrums when asked to clean his room; can read some but not at grade level, he often fought with other children, and his behavior has prevented him from going out for gym or recess.

The medical records show that the child has been treated for asthma at Children's Hospital. He was seen at the allergy clinic and in 2006 was diagnosed with mild to moderate, persistent respiratory asthma, and allergic rhinitis. (Tr. 174-175, 178) In 2005, he had two acute attacks which were treated. His medications were adjusted and it was noted that there were compliance issues with his medications; that is, that the child was not receiving his medications as he should have been. With regular use of the medication, the asthma improved; it was noted to be mild and remained under control in 2007. (Tr. 177-182) He also had cavities and was referred to the dental clinic. He was noted to be hyperactive. (Tr. 177-178)

With respect to his hearing loss, medical records show that he was seen at Sierra Medical Group in January, 2005. The examiner reports a history of chronic ear infections. (Tr. 111) His audiological assessment of "this year" was within normal limits. Id. His vision has never been tested. Voice and other speech parameters were reported as within normal limits. (Tr. 112) The assessment also noted that his speech production and development was age appropriate. (Tr. 113) Weaknesses identified were the short attention span, hyperactivity, and receptive language skills. (Tr. 114) The hyperactivity interfered with his ability to listen and learn. Id.

In August, 2007, the child underwent an assessment at the Children's Center of Wayne County. (Tr. 183-200) Some treatment for left ear hearing loss was noted. (Tr. 185) He exhibited normal I.Q. and no memory deficit. He was diagnosed with oppositional defiant disorder, ADHD and a GAF of 42. (Tr. 194) A plan of behavior modification and interventions was laid out for him and his mother to follow. (Tr. 194-198)

In December, 2007, his teacher Mrs. Brown reports that JEB is at Grade Level in reading, mathematics, and written language. There was not an unusual degree of absenteeism. (Tr. 92)

No problems were observed in acquiring and using information, he needs verbal support to complete tasks when working in a group, and has daily problems with interacting and relating to others. Telling stories and introducing relevant topics of conversation were the two noted "serious problems." (Tr. 95) JEB had no problems moving about or manipulating objects, but problems with handling frustration and being patient. (Tr. 97)

The ALJ also considered the findings of the State Agency physician that JEB has mild hearing loss in the left ear and asthma by history. (Tr. 145) The assessment was that the impairments were severe but not functionally or medically equal to a listed impairment or combination of impairment. (Tr. 145) The reviewer found no domains impacted except for Health and Physical Well-being in a less than marked limitation. (Tr. 147-148).

While the ALJ found that JEB had difficulties in the domains of Self-care, Health and Physical Well-being, and in attending and completing tasks, he found that these were less than "marked." But, he also found that JEB had "marked" limitations in interacting with others, though no limitations in moving and manipulating objects or in acquiring and using information.

**Plaintiff's Arguments**

The mother does not point to anything specific but contends that the ALJ did not adequately consider the child's progressive behavior problems and side effects of his medications, as well as his other impairments. (#21)

*1. The Additional Evidence Is Not Properly Considered.*

In support of the behavior problems of JEB, plaintiff attaches school records from his school year in Fall, 2009, dates after the ALJ's February 2008 opinion. These do not appear to have been submitted to the Appeals Council (see Tr. 9) and therefore are not properly before the

court in this application. Similar arguments were made and rejected in *Kelly v. Commissioner of Social Sec.* 314 Fed.Appx. 827, 831, 2009 WL 233266, 4 (6th Cir.2009).

> The new teachers' reports are not very different from the first-grade report dated November 13, 2002, which existed when the state agency experts rendered their opinions and which Mrs. Kelly does not argue was unavailable to those experts. The new reports agree with the old one that Aaron's worst area was "attending and completing tasks." In the first grade report section on attending and completing tasks, he had a "serious problem" ranking on seven out of thirteen items. One second grade report was slightly better, one slightly worse. In the 2003 second grade report, he had "a serious problem" ranking on four out of thirteen items in the attending and completing section. In the 2004 second grade report, he had five "extremely serious problem" rankings and five "serious problem" rankings, with only three items at "a slight problem." The new reports do not present a significantly different picture on attending and completing tasks than the 2002 report.

As is the case here, the reports are not new and material evidence because they do not address the period of time at issue in this application. See, *Oliver v. Secretary of HHS*, 804 F2d 964, 966 (6th Cir. 1986). Thus, they should not be grounds to remand. Plaintiff was advised in the opinion that if she believed that the child was disabled after February, 2008, she could submit a new application. (Tr. 13)

2. *The ALJ Did Not Err in Evaluating Credibility*

With respect to plaintiff's allegations that the ALJ improperly rejected her credibility, this circuit recently reiterated the standard to be applied to such a contention in *Collins v. Commissioner of Social Sec*. 357 Fed.Appx. 663, 668, 2009 WL 4906907, 4 (6th Cir.2009): the ALJ is "charged with the responsibility of observing the demeanor and credibility of witnesses therefore his conclusions should be highly regarded." (citing *Bradley v. Sec'y of Health & Hum. Servs.,* 862 F.2d 1224, 1227 (6th Cir.1988)). The *Collins* court noted that discretion is "vested in the ALJ to weigh all the evidence." *Id.* On review, a court is "to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which

we do not, of observing a witness's demeanor while testifying." *Id*. A court may not "try the case *de novo,* nor resolve conflicts in evidence...." *Gaffney v. Bowen,* 825 F.2d 98, 100 (6th Cir.1987). In this case, the ALJ found plaintiff not entirely credible after considering her statements and comparing them to the medical and school records. For example, the mother testified that the child experienced side effects from the medication but the medical records did not reflect that. The ALJ reasonably found a degree of impairments supported by objective reports and substantial evidence supports the findings. No error was committed.

*3. The ALJ Considered the Behavior Problems*

Plaintiff argues that JEB's behavioral problems render him disabled. The ALJ found that the child did have "marked" limitation in this domain. He has temper tantrums, hits his peers, and has difficulty expressing anger appropriately. He needs to learn to follow rules, maintain appropriate topics of conversation, and take turns. This finding is well supported by the record, but the "marked" finding in this one domain is not sufficient to find the child disabled.

*4. The ALJ Properly Evaluated the Evidence*

The ALJ appropriately considered the objective factors bearing on JEB's abilities. He considered the medical evidence, treatments, medications, activities, and teacher observations. To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment in more than one. § 416.926a(d). Lengthy definitions for marked and extreme are set out in § 416.926a(e). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. § 416.926a(e)(2)(i)."Extreme" limitation is the rating for

the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean. 20 CFR §416.926a(e)(3)(I).

In *Jones ex rel. T.J. v. Astrue* 2010 WL 1049283, 9 (E.D.N.Y.,2010), the court found that the ALJ reasonably found the limitation "marked" and not "extreme" where he considered evidence from T.J.'s parents, teachers, and consultative examiners which showed that he has problems completing tasks as a result of his ADHD, but that he can successfully complete tasks if refocused and given individualized attention. In this case, there is not evidence to show that the ALJ did not reasonably review the evidence and determine the severity of the child's impairments. Substantial evidence supports the ALJ's findings.

**Conclusion**

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied and the decision denying SSI benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                               s/Virginia M. Morgan
                               Virginia M. Morgan
                               United States Magistrate Judge

Dated: June 30, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on June 30, 2010.

                               s/J. Johnson
                               Case Manager to
                               Magistrate Judge Virginia M. Morgan